**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JAMES MAJORS, ) | |
| ) | CASE NO.    1:13CV1098 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
|   Acting Commissioner of Social ) | |
|   Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff James Majors ("Majors") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423 *et seq.* This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On October 13, 2009, Majors filed an application for POD and DIB alleging a disability onset date of April 30, 2009 and claiming he was disabled due to hepatitis C, ascites, and cirrhosis of the liver.  (Tr. 95-98, 115.)  His application was denied both initially and upon reconsideration. (Tr. 57-59, 61-63.)

On October 12, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Majors, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 30-54.)

An impartial medical expert ("ME"), Douglas W. Junglas, M.D., was scheduled to appear at the hearing but was unable to do so. (Tr. 15, 32-33.) Instead, the ALJ later sent written interrogatories to a different ME, Cathy A. Krosky, M.D. (Tr. 15.) Dr. Krosky submitted her interrogatory responses on December 19, 2011 and they were made part of the record. (Tr. 15, 538-549.)

On February 23, 2012, the ALJ found Majors was able to perform past relevant work and, therefore, not disabled at any time prior to August 25, 2011. (Tr. 19-21.) However, the ALJ also concluded Majors' medical impairments met the criteria of Listing 13.19 beginning on August 25, 2011; and, that Majors became disabled on that date and continued to be disabled through the date of the decision. (Tr. 21-22.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-3.)

## II. Evidence

*Personal and Vocational Evidence*

Age fifty-five (55) at the time of his administrative hearing, Majors is a "person of advanced age" under social security regulations. *See* 20 C.F.R. § 404.1563(e). (Tr. 95.) Majors has a high school education and past relevant work as an "over-the-road" truck driver, furniture mover, dump truck driver, and kitchen supervisor. (Tr. 20-21, 119.)

*Hearing Testimony*

During the October 12, 2011 hearing, Majors testified as follows:

- In April 2009, he was found to have ascites. He was told they were caused by cirrhosis of the liver and hepatitis C. (Tr. 37-38.) His condition caused him to experience "extreme nausea," fatigue, and severe cramps in his arms and legs. (Tr. 38.)

- Since April 2009, he has felt significantly fatigued every day. He becomes tired "really fast" and "just wants to sleep and stay in bed all day sometimes." (Tr. 38-39.) He takes naps every day. Any kind of physical activity makes his fatigue worse, including walking and working. (Tr. 40-42.) His fatigue has made it harder for him "to do stuff that I used to do pretty easily." (Tr. 41.)

- He also has "bad sleep habits." (Tr. 39.) Sometimes he cannot fall asleep, and sometimes he falls asleep too easily. On some days, he will sleep for 12 to 14 hours, while on others he "doesn't sleep well at all." (Tr. 39.)

- He has had a long-standing problem with nausea. He takes medication, which

2

    does not completely alleviate his nausea but does "help quite a bit." Sometimes he has to lay down and rest because he feels like he is going to throw up. (Tr. 43.)

- He experiences cramping in his arms and legs whenever he works too hard. It causes him to "wake up screaming." His cramps are caused by "anything that he uses his muscles for," including shoveling snow and sweeping. His doctors have told him the cramping is caused by his disease and his medication. (Tr. 44-45.)

- His treatment for hepatitis C and cirrhosis of the liver includes a weekly shot. He used to take pills every day but they "didn't work." His doctors told him that he is a "non-responder" to certain kinds of treatment. (Tr. 44.) One of the medications he takes for his ascites causes him to experience frequent urination. (Tr. 52.)

- In the past, he has worked as a dump truck driver, over-the-road truck driver, and "moved furniture truck driver." He also was part-owner of a restaurant and did a lot of the cooking. As a dump truck driver, he had to get on and off the truck and "roll the tarp." As a furniture mover, he had to lift very heavy pieces of furniture. As a cook he was on his feet most of the time and lifted up to 50 pounds. (Tr. 45-47.)

- Since April 2009, he would not be able to be on his feet for six hours in an eight hour workday. He could "probably lift something, but that doesn't mean I wouldn't pay for it later with the cramps." He cannot estimate how much he could lift on a regular, frequent basis because he has "tried to estimate it before and I end up cramping and hurting myself." (Tr. 47.)

- He lives by himself. He is able to drive, do laundry, and cook his own meals. He can do his own yard work "for a short time." However, "other people come and stay sometimes to help out," including various friends and his stepson's wife and kids. They help him with cooking, yard work, and taking him places. (Tr. 40-42.)

- He was recently diagnosed with liver cancer. His doctors "want to test him for a transplant" and have recommended chemotherapy. (Tr. 47-48.)

  The VE testified Majors had past relevant work as (1) an over-the-road truck driver (medium, semi-skilled, SVP 4); (2) furniture mover driver (very heavy, semi-skilled, SVP 4); (3) dump truck driver (medium, unskilled, SVP 2); and, (4) kitchen supervisor (medium, skilled, SVP 7). (Tr. 50-51.)

  The ALJ did not pose any hypothetical questions to the VE. (Tr. 52.) Majors' attorney posed one hypothetical to the VE as follows:

> [I]f we had an individual who was functioning say, at the light level of exertion, however would require frequent rest breaks in the eight-hour workday, say four more than what was regularly allowed. Would that person be capable of performing sustained work activity?

(Tr. 52.) The VE testified such a hypothetical individual would not be capable of sustained work activity. (Tr. 52.)

3

Finally, the ALJ explained that the medical expert he had engaged to testify at the hearing was unable to attend. (Tr. 32-33.) He indicated he would send written interrogatories to an ME, once Majors submitted updated medical records. (Tr. 35-36, 53.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Majors was insured on his alleged disability onset date, April 30, 2009, and remained insured through the date of the ALJ's decision, February 23, 2012. (Tr. 15.) Therefore, in order to be entitled to POD and DIB, Majors must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  Summary of Commissioner's Decision

The ALJ issued a partially favorable decision on February 23, 2012.  (Tr. 15-22.)  The ALJ first found that, since the alleged disability onset date of April 30, 2009, Majors established medically determinable, severe impairments due to hepatitis C and cirrhosis of the liver secondary to hepatitis C.  (Tr. 18.)  The ALJ further found that, on and after August 25, 2011, Majors established the additional medically determinable, severe impairment of liver cancer.  (Tr. 18.)  The ALJ then found that Majors' impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 during the time period prior to August 25, 2011.  (Tr. 18-19.)  However, the ALJ concluded that, beginning on August 25, 2011, Majors' liver cancer met the criteria for Listing 13.19 of 20 CFR Pt. 404, Subpt P, App. 1.  (Tr. 21-22.)

In addition, the ALJ found that, prior to August 25, 2011, Majors retained the Residual Functional Capacity ("RFC") to perform the full range of medium work.  (Tr. 19-20.)  The ALJ also concluded that, during this time period, Majors was capable of performing his past relevant work as an over-the-road truck driver, dump truck driver, and restaurant cook (i.e. kitchen supervisor).  (Tr. 20-22.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Majors was not disabled prior to August 25, 2011.  (Tr. 20-22.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and*

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Failure to Accord Proper Weight to the ME Report*

Majors argues the ALJ failed to properly evaluate ME Cathy Krosky's written interrogatory responses. He maintains that, although the ALJ claimed to afford "great weight" to Dr. Krosky's report, he improperly rejected her opinion that Majors "was likely disabled as early as July 29, 2008." (Doc. No. 12 at 7.) Majors further asserts that "the ALJ cannot grant Dr. Krosky great weight; and then fail to consider her overall analysis of the record and accept her opinion only partially." *Id*. He claims "[c]areful consideration of Dr. Krosky's entire report would lead a reasonable person to conclude that her opinion provides substantial evidence to support a finding that Plaintiff's cancer most likely existed, or that his condition met the criteria for Listing 13.19 well before August 25, 2011." *Id*.

The Commissioner argues the ALJ's finding that Majors was not disabled prior to August 25, 2011 is supported by substantial evidence. She maintains the ALJ was not required to accept the portion of Dr. Krosky's report suggesting Majors may have been disabled as of an earlier date. Further, the Commissioner notes the ALJ explained his reasons for concluding the medical evidence failed to support a finding of disability prior to Majors' cancer diagnosis. (Doc. No. 14.)

As set forth *supra*, the ALJ sent written interrogatories to ME Krosky after the conclusion of the hearing. (Tr. 15, 35-36, 53.) Dr. Krosky submitted her responses on December 19, 2011, and they were admitted into the record. (Tr. 15, 538-549.) As part of her responses, Dr. Krosky attached a typewritten report in which she provided a detailed itemization and discussion of Majors' medical records from July 2003 to October 25, 2011. (Tr. 541-549.) On the basis of her review of these records, Dr. Krosky concluded Majors' impairments met the requirements of Listing 13.19, explaining as follows:

> 13.19 Liver or gallbladder– tumors of the liver, gallbladder, or bile ducts. Claimant has high probability of hepatocellular carcinoma (HCC). He has two sites of probable liver HCC.
>
> The liver tumors were first identified on MRI Abdomen scan 8/25/11, 13F/70-72. They were not present on previous MRI Abdomen scan 8/4/2009, 1F/113-114. However, the alpha fetoprotein (AFP) tumor marker, used as a screen for liver

> cancer, has been consistently elevated since first test on 7/29/08, 1F/96. The AFP is not diagnostic of liver cancer, but greater-than-normal levels may be due to liver cirrhosis and liver cancer, and certain other type cancers. Doctors accept an elevated AFP as an alarm for possibility of cancer. The HCC was identified 8/25/2011 but may have begun to grow as far back as 7/29/08 or earlier. He "meets" on 8/25/11– likely earlier.

(Tr. 538.) Dr. Krosky did not offer an opinion as to whether Majors' impairments would be expected to result in either exertional or non-exertional limitations. (Tr. 539.)

The ALJ evaluated Dr. Krosky's report as follows:

> Upon consideration of Dr. Krosky's medical expert opinion, the result of an MRI of the claimant's abdomen (dated August 25, 2011), and the claimant's testimony at the hearing, I find that the claimant's liver cancer has met the criteria for Listing 13.19 (malignant neoplastic disease: liver or gallbladder) on or after August 25, 2011. (Exhibit 13F, pages 70-72; see also Exhibit 13F, page 23-35.)
>
> To meet the criteria for Listing 13.19, a claimant must be diagnosed with a tumor of the liver, gallbladder, or bile ducts.
>
> In reaching this conclusion, I find that beginning on August 25, 2011, the claimant's allegations regarding his symptoms and limitations are generally credible.
>
> Specifically, Dr. Krosky opined that the claimant "has a high probability of hepatocellular carcinoma ("HCC"). He has two sites of probable liver HCC. The liver tumors were first identified on an MRI abdomen scan on August 25, 2011." (Exhibit 13F, pages 70-72, see Exhibit 17F, page 1.) Although Dr. Krosky opined that doctors accept an elevated AFP as an "alarm for the possibility of cancer," she also opined, "an AFP is not diagnostic of liver cancer" and "greater-than-normal levels may be due to liver cirrhosis and liver cancer." (Exhibit 17F, page 1.) In the claimant's case, his AFP levels have been consistently elevated since July 29, 2009. (Exhibit 1F, page 96.) On the other hand, Dr. Krosky opined the claimant underwent an MRI of the claimant's abdomen on August 4, 2009 based on which the interpreting radiologists Amy Kao, M.D., and Joseph C. Veniero, M.D., did not find evidence of a tumor but did find evidence of cirrhosis and portal hypertension. (Exhibit 1F, pages 113-114.) Accordingly, I find that the evidence establishes that the claimant's liver cancer met the criteria for Listing 13.19 beginning August 25, 2011.
>
> As for the opinion evidence, I give great weight to Dr. Krosky's responses to the medical interrogatories to the extent that I have adopted [them] in my findings.

(Tr. 21-22.) Based on the above, the ALJ concluded that "[b]eginning on August 25, 2011, the severity of the claimant's impairments has met the criteria of section 13.19 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1525)." (Tr. 21.)

An ALJ can properly rely on the testimony of a non-examining medical expert "in order to make sense of the record." *Miller v. Colvin*, 2014 WL 325694 at * 9 (S.D. Ohio Jan. 29,

8

2014) (citing *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir.2001)). An ALJ's reliance on the opinion of a non-examining medical expert is proper if the expert's opinion is based on objective reports and opinions. *See Dalton v. Colvin*, 2014 WL 301443 at * 6 (S.D. Ohio Jan. 28, 2014); *Miller*, 2014 WL 325694 at * 9. *See also* 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii) (An ALJ "may ... ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment.").

That being said, an ALJ is not required to adopt every opinion expressed by a non-examining medical expert, even when an ALJ overall accords that opinion great weight. *See Taylor v. Colvin*, 2013 WL 6162527 at * 14-15 (N.D. Ohio Nov. 22, 2013) (finding ALJ was not required to adopt every opinion of ME "by virtue of the fact that, overall, he gave [the ME's] opinion great weight"). *See also White v. Comm'r of Soc. Sec.*, 2013 WL 4817673 at * 16 (N.D. Ohio 2013) (noting that "[t]he fact that the ALJ did not incorporate all of Dr. Castor's restrictions, despite attributing significant weight to his opinion, is not legal error in and of itself"); *Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133 at * 11 (N.D. Ohio March 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given great weight"); *Lambert– Newsome v. Astrue*, 2012 WL 2922717 at * 6 (S.D. Ill. July 17, 2012) (noting the fact that the ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale"); *Irvin v. Astrue*, 2012 WL 870845 at * 2–3 (C.D. Cal. March 14, 2012) (finding that although the ALJ gave great weight to a medical source opinion, he did not err in implicitly rejecting one limitation from that opinion).

Here, the ALJ sought the opinion of ME Krosky regarding the nature and severity of Majors' impairments, by sending her written interrogatories after the conclusion of the hearing. It is clear from the decision that the ALJ considered Dr. Krosky's report and accepted her opinion that Majors' impairments met the requirements of Listing 13.19 as of August 25, 2011; i.e. the date of the MRI of Majors' abdomen in which his liver tumors were first identified. The ALJ did not, however, accept Dr. Krosky's suggestion that it was "likely" Majors met the requirements of Listing 13.19 "earlier," possibly as far back as July 29, 2008.

The Court finds the ALJ did not err in failing to accept Dr. Krosky's statement that Majors "likely" or "may have" met Listing 13.19 prior to August 25, 2011. As an initial matter, Dr. Krosky does not affirmatively conclude that Majors did, in fact, meet the listing at any definitive point in time prior to August 25, 2011. Rather, she postulates that Majors' liver cancer "may have begun to grow as far back as 7/29/08 or earlier" based on the fact that he had elevated AFP levels. (Tr. 538.) The ALJ specifically acknowledged Dr. Krosky's suggestion that Majors may have met the Listing earlier, but went on to explain that, by Dr. Krosky's own admission, an elevated AFP "is not diagnostic of liver cancer" and "may be due to liver cirrhosis." (Tr. 22.) Moreover, the ALJ noted that, although Majors' AFP levels had been elevated since July 2009, an MRI taken one month later did not find evidence of a tumor. (Tr. 22.)

Thus, the decision indicates the ALJ considered Dr. Krosky's suggestion that Majors may have met the Listing at an earlier date and, further, that he provided several reasons for rejecting it. Significantly, Majors does not direct this Court's attention to any specific evidence in the record to support his argument that the ALJ erred in declining to accept this aspect of Dr. Krosky's report. While he argues summarily that the ALJ failed to "consider [the ME's] overall analysis," Majors does not identify which of the voluminous treatment notes, objective testing, or lab results documented in Dr. Krosky's report were ignored by the ALJ. Nor does he explain how any particular portions of the medical record should have persuaded the ALJ to reach a different conclusion.

Majors laments that "[i]t is unfortunate ... Dr. Krosky was not present at hearing to testify" and asserts "it is quite clear that Dr. Krosky most likely would have agreed that the evidence establishes disability as of Plaintiff's alleged onset date of April 30, 2009." (Doc. No. 12 at 8-9.) However, Majors does not argue he was prevented from providing responses to Dr. Krosky's report or requesting another hearing. While Majors believes Dr. Krosky would have testified he was disabled as of his onset date, this is pure speculation. The fact remains the ALJ considered Dr. Krosky's report and provided reasons for rejecting that portion of it that suggested Majors "may have" met the Listing prior to August 25, 2011. In light of the equivocal nature of Dr. Krosky's opinion, and in the absence of any reference to specific medical evidence

10

in the record refuting the ALJ's analysis, the Court finds the ALJ did not err in his finding.

Accordingly, Majors' first assignment of error is without merit.

*RFC Assessment*

In his second assignment of error, Majors argues the ALJ's conclusion that he is capable of a full range of medium work prior to August 25, 2011 is not supported by substantial evidence. He asserts the ALJ "ignores highly probative and relevant medical evidence that substantiates that the plaintiff's conditions impose significant limitations on his ability to perform any work activity, let alone work at the medium level of exertion." (Doc. No. 12 at 9.) Majors further complains the ALJ failed to proffer any hypothetical questions to the VE that included any exertional or non-exertional limitations, arguing "the record of evidence clearly portrays a very severe disease process that imposes both exertional limitations preventing the performance of medium work; as well as non-exertional limitations that are wholly unaccounted for in the ALJ's decision." *Id*. at 12. Thus, he claims the RFC is "simply unsupported by substantial evidence." *Id*. at 9.

The Commissioner argues Majors has failed to satisfy his burden of demonstrating, at step four of the sequential evaluation process, that he cannot return to his past relevant work. She lists specific examples of medical evidence that she claims demonstrate the RFC is supported by substantial evidence. Moreover, she argues the ALJ properly evaluated the opinion evidence of record. Finally, the Commissioner asserts Majors "has provided no evidence substantiating that he could not meet the physical demands of his past jobs as an over-the-road truck driver, a dump truck driver, and a restaurant cook (i.e. kitchen supervisor) prior to August 25, 2011." (Doc. No. 14 at 13.)

A claimant's RFC is the most that he can still do despite his functional limitations. 20 C.F.R. § 404.154(a); SSR 96-8p. The assessment must be based upon all of the relevant evidence, including the medical records and medical source opinions. 20 C.F.R. § 404.1546(c). The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of

credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 2008 WL 162942 at * 6 (6th Cir. Jan. 15, 2008) (stating that "it squarely is *not* the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") Indeed, the Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 2004 WL 2567650 (6th Cir. Nov. 10, 2004); *Poe v. Comm'r of Soc. Sec.*, 2009 WL 2514058 (6th Cir. Aug. 18, 2009). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 2009 WL 2514058 at * 7.

Here, the ALJ acknowledged Majors' allegations of nausea, fatigue, and abdominal pain resulting from hepatitis C and cirrhosis of the liver. (Tr. 19.) He found Majors' medically determinable impairments could reasonably be expected to cause these symptoms, but concluded Majors' statements regarding the intensity, persistence and limiting effects of his symptoms were "not credible prior to August 25, 2011, to the extent they are inconsistent with the [RFC]." *Id.*

The ALJ then discussed the medical and opinion evidence regarding Majors' impairments prior to August 25, 2011 as follows:

> Specifically, the medical record indicates that the claimant has experienced nausea, fatigue, and ascites secondary to cirrhosis with portal hypertension (with thrombocytopenia) and/or hepatitis C. (See, e.g., Exhibits 1F, page 67; 2F, page 29.) On the other hand, the claimant's treatment history indicates that he underwent paracentesis and was prescribed diuretics that improved his energy level and appetite, and controlled the development of any further edema/water retention. (See Exhibit 1F, pages 67, 72, 99, 101; 2F, page 29.)
>
> Based on the claimant's medical record as a whole, State Agency consultant James Gahman, M.D., opined that the claimant was limited to a range of medium work secondary "frequent urination, which could reasonably be caused by his MDI." (Exhibit 3F, pages 2-6.) I give considerable weight to Dr. Gahman's opinion because I find that the claimant's symptoms suggest that the effects of his impairments have limited him to medium work. On the other hand, I give less weight to Dr. Gahman's opinion that the claimant's impairments have caused postural limitations. (Exhibit 3F, page 3.) Specifically, I find that the claimant's fatigue and the ameliorative effects of medication to treat his nausea (Marinol),

> gastritis (Nexium) and ascites (diuretics) establish that his symptoms have not caused him greater limitations than the ability to perform a full range of medium work. (Exhibits 1F, page 67; 2F, pages 29, 30; 13F, page 29.) Accordingly, I find that the effects of the claimant's physical impairments caused him to be limited to a maximum residual functional capacity of medium work prior to August 25, 2011.
>
> Additionally, I give great weight to Dr. Krosky's impartial medical expert opinion for the following reasons. First, she based her opinion on the entire record as a whole, including a medical source statement from the claimant's treating physician Dr. Jack Rutkowski, M.D., that was received after the hearing. (Exhibit 17F, see Exhibit 15F.) Second, she is a board-certified family practice physician who is familiar with the rules and regulations of Social Security disability law.
>
> I give less weight to Dr. Rutkowski's assessment of the claimant's residual functional capacity (dated October 25, 2011) because his treatment notes, the claimant's general treatment history, including statements to treating sources, the claimant's use of Percocet (as needed) for pain, and the objective evidence as a whole suggest that the claimant was able to perform a full range of medium work prior to August 25, 2011. (Exhibit 15F; but see Exhibits 8E; 2F, page 29; 13F, page 28.)
>
> In sum, the above residual functional capacity assessment is supported by the record as a whole.

(Tr. 19-20.) The ALJ formulated the RFC as follows: "Prior to August 25, 2011, the date he became disabled, the claimant retained the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c)."[2]  (Tr. 19.)

Citing the VE's testimony, the ALJ then found that, prior to August 25, 2011, Majors was capable of performing his PRW as an over-the-road truck driver, a dump truck driver, and a restaurant cook (i.e. kitchen supervisor), "which he actually performed and/or are generally

---

[2] As explained in Social Security Ruling ("SSR") 83-10, 1983 WL 31251 (1983), "[t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8–hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.)." SSR 83-10, 1983 WL 31251 at * 6.

performed at the medium exertional level." (Tr. 20.) In so finding, the decision expressly noted that "[t]his work did not require the performance of work-related activities precluded by" Majors' RFC. (Tr. 20.)

The Court rejects Majors' argument that the RFC is not supported by substantial evidence. While Majors argues generally that his "complex and complicated medical history" contains numerous test results and clinical findings "that seemingly indicate very severe life-threatening impairments," he does not identify a single, specific piece of medical or opinion evidence that allegedly demonstrates he cannot perform medium work. Although Majors does recount at least some of the medical evidence in the opening section of his brief, he does not clearly and concisely explain how any particular piece of that evidence undermines the RFC. Nor does he direct this Court's attention to any physician opinion evidence that he claims is incompatible with the RFC assessment.[3]

As the claimant, Majors has the burden to demonstrate, at step four, that he cannot perform his past relevant work. *See* 20 CFR 404.1520. *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability"); *Walton v. Astrue*, 773 F.Supp.2d 742, 746 (N.D. Ohio 2011) ("The claimant bears the burden of proof at Steps One through Four"). His general and conclusory assertions that he is incapable of a full range of medium work are simply insufficient to satisfy this burden.

For similar reasons, the Court rejects Majors' argument that the ALJ erred in failing to pose any hypothetical questions to the VE "that included any exertional or non-exertional limitations." (Doc. No. 12 at 11.) As an initial matter, Majors fails to identify any specific functional limitations (exertional or non-exertional) which he believes should have been included in a hypothetical question to the VE. Moreover, he fails to identify any medical or opinion evidence that supports his vague, unsupported assertion that "the record of evidence

---

[3] Moreover, Majors does not argue the ALJ improperly evaluated the opinions of either Dr. Gahman or Dr. Rutkowski.

clearly portrays a very severe disease process that imposes both" exertional and non-exertional limitations preventing the performance of medium work. *Id*. at 12.

Accordingly, the Court finds Majors' second assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner should be AFFIRMED.

s/ Greg White<br>
United States Magistrate Judge

Date: March 3, 2014

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**